[Civ. No. 21543.   Second Dist., Div. Three.   Dec. 17, 1956.]

LESLIE L. HICKSON et al., Respondents, v. HARRY F. THIELMAN et al., Appellants.

James C. Webb for Appellants.

Ball, Hunt & Hart and Clark Heggeness for Respondents.

SHINN, P. J.—This is an action by judgment creditors of defendant Harry F. Thielman to set aside certain alleged fraudulent transfers made by him to his son, defendant Robert Q. Thielman, and to his daughter, defendant Medley E. Thielman. The matter came on for trial on a second amended complaint and the answer thereto. Trial was to the court. The court made findings of fact and entered judgment for plaintiffs. Defendants appeal from the judgment. They contend that the evidence does not support the findings, the judgment is unsupported by the findings and that a judgment in favor of defendants in a prior action between the parties is res judicata as to this action.

Defendant Harry F. Thielman is the surviving husband of Nellie Thielman. During their married life, Harry and Nellie acquired two assets, an equity in a home located in Compton, California, and an installment promissory note in the amount of $10,200, payable to Harry and Nellie at the rate of $100 per month and secured by a trust deed upon real property in Perris, California. Plaintiffs are the children of Nellie by a former marriage; defendants Robert Thielman and Medley Thielman are the children of Harry by a former marriage.

Nellie Thielman died in April, 1951, and left a holographic will which bequeathed to plaintiffs an interest in the home in Compton, subject to a life estate in favor of Harry, and a one-half interest in the promissory note. After Nellie's death, plaintiffs claimed that the home and the promissory note were the community property of Harry and Nellie (although they were both held in joint tenancy) and asserted their rights under Nellie's will. This claim was compromised by means of a written agreement, dated May 23, 1951, whereby plaintiffs waived their rights under the will and Harry agreed to terminate the joint tenancies and to convey to plaintiffs a one-half interest in the note and a one-third interest in the home, subject to a life estate in his favor. The joint tenancies were terminated by decree in July, 1951. Later that same month Harry served plaintiffs with a notice of rescission of the May agreement, charging undue influence and lack of consideration. On July 30, 1951, Harry assigned his interest

in the note and trust deed to Robert.   The assignment was recorded.

On October 4, 1951, plaintiffs filed an action against Harry and Robert, in which they sought specific performance of the May agreement against Harry, or for damages if specific performance could not be had.   The court granted specific performance of Harry's promise to convey a one-third interest in the home, but denied specific performance of his promise to ·convey the one-half interest in the note and trust deed. In lieu of the latter, the court awarded plaintiffs $4,264 damages, being one-half of the balance due on the promissory note as of August 1, 1951.   The court found that Harry had assigned the note and trust deed to Robert prior to the commencement of the action and decreed that plaintiffs were not entitled to specific performance against Robert.   The judgment in that action was entered in June, 1953, and is now final.

After an execution on the money judgment against Harry was returned *nulla bona,* plaintiffs filed the present action to set aside the assignment to Robert (as well as certain other transfers by Harry to his children which will be described presently) on the ground that they were a fraud upon plaintiffs as judgment creditors of Harry.   Their second amended complaint set forth the obtaining of the judgment against Harry.   It contains the following allegations:   That the only assets owned by Harry and subject to execution were his equity in the home (which did not exceed $500) and the note and trust deed; that on or about August 3, 1951, Harry assigned the note and trust deed to Robert without consideration and for the purpose of hindering, delaying and defrauding plaintiffs and that, notwithstanding the assignment, Harry continued to receive the monthly payments due under the note; that Harry was, and at all times since the assignment of the note and trust deed, had been insolvent and his assets subject to execution insufficient to pay his obligation to plaintiffs; that Robert took the note and trust deed with knowledge of plaintiffs' claim under the agreement of May, 1951 and with knowledge that the assignment rendered Harry insolvent.   There follow allegations based upon information and belief that Harry subsequently sold the note and trust deed to a bank and gave a portion of the proceeds of the sale to his daughter Medley without consideration.   Plaintiff prayed that Harry's gifts to his children be set aside and asked for personal judgments against Robert and Medley.

Defendants admitted the judgment against Harry and denied the other allegations of the complaint. The answer alleged that at the time of the commencement of this action, the prior action was pending in the superior court between the same parties and for the same cause of action as in the instant case, and that the judgment in favor of Robert in the prior action is res judicata.

After a trial on the merits, the court made the following findings of fact. It found that on or about August 1, 1951, defendants entered into a conspiracy to defraud plaintiffs as judgment creditors of Harry and that they committed a number of acts in furtherance of the conspiracy and with the actual intent to delay, defraud and hinder plaintiffs in the collection of their judgment. The court found that Harry voluntarily assigned to Robert the note and trust deed without consideration in 1951 and that Robert voluntarily reassigned them to his father without consideration in November, 1953. It found that Harry sold the note and trust deed to a bank in January, 1954. Harry received $6,000 for the note; at that time it had a value of $7,000. The court found that Harry made several gifts to his children from the proceeds of the note, a gift of $1,500 to Medley, and two gifts to Robert, one of $1,200 (which Robert deposited with a credit union) and another gift of $1,000 (out of which Robert spent $400 towards the improvement of his home). The court found that Harry spent $760 of the remainder in improving the Compton residence.

The court likewise found that these gifts rendered Harry insolvent and that defendants intended, knew and believed them to be a fraud upon plaintiffs as judgment creditors. It found the defenses of prior action pending and res judicata to be untrue. It awarded plaintiffs $1,500 against Medley and $2,200 against Robert. It also awarded plaintiffs a $400 lien against Robert's home and a $760 lien against Harry's residence.

The first contention of defendants is that the findings are unsupported by the evidence. In this connection, we repeat what every lawyer should know, namely, that when an appellant urges the insufficiency of the evidence to support the findings it is his duty to set forth a fair and adequate statement of the evidence which is claimed to be insufficient. He cannot shift this burden onto respondent, nor is a reviewing court required to undertake an independent examination of the record when appellant has shirked his responsibility in this respect.

■ The reporter's transcript in the instant case contains 246 pages of testimony. The matter occupied the court below for several days. Appellants have made no attempt to make a fair statement, or, indeed, anything approaching a fair statement of the evidence claimed to be insufficient. Their failure to do so will be deemed tantamount to a concession that the evidence supports the findings. (See *Goldring* v. *Goldring*, 94 Cal.App.2d 643 [211 P.2d 342]; *Jiril* v. *Day*, 95 Cal.App.2d 214 [212 P.2d 275]; *Morrell* v. *Clark*, 106 Cal. App.2d 198 [234 P.2d 774]; *People* v. *Shannon*, 110 Cal.App. 2d 153 [241 P.2d 1007]; *Kruckow* v. *Lesser*, 111 Cal.App.2d 198 [244 P.2d 19]; *Tesseyman* v. *Fisher*, 113 Cal.App.2d 404 [248 P.2d 471]; *Eisendrath* v. *Bank of America*, 118 Cal.App. 2d 434 [258 P.2d 13]; *McCosker* v. *McCosker*, 122 Cal.App.2d 498 [265 P.2d 21]; *People* v. *Johnson*, 136 Cal.App.2d 665 [289 P.2d 90]; *Elliott* v. *Rodeo Land & Water Co.*, 141 Cal. App.2d 404 [297 P.2d 129].) ■ However, there was substantial evidence that Harry's transfers to his children were gifts and it is undisputed that the gifts rendered him insolvent. They were therefore presumptively fraudulent (Civ. Code, § 3439.01 et seq.) and the presumption is itself evidence of fraud. ■ Moreover, the court found that Harry, Robert and Medley had an actual intent to defraud plaintiffs. For the reasons stated the evidence will be deemed sufficient to support the finding. The personal judgments against Robert and Medley were therefore proper. Harry and Robert admitted using $760 and $400 from the proceeds of the note in improving their respective homes. The court was justified in awarding plaintiffs liens in those amounts against the real property owned by Harry and Robert.

■ Defendants contend that Medley testified that she returned the $1,500 to Harry and for that reason it was error to render judgment against her. The court was not required to believe her testimony and we must assume that the court did not believe it. But there was evidence to support the findings that Medley conspired with the others to defraud plaintiffs and if, as the court found, she received the money with that intention and purpose, returning the money to Harry would not have relieved her of responsibility. It is immaterial whether she entered into the scheme for the benefit of herself or for the benefit of Harry.

■ Defendants' second contention is that the judgment in favor of Robert in the prior action is res judicata. They argue that there is an identity of parties, issues and subject matter

in the two actions and that the former judgment bars plaintiffs from asserting any interest in the proceeds of the note. The argument is without merit. Fraud in the assignment from Harry to Robert was not in issue in that case. The judgment denied specific performance as against Harry with respect to the note and awarded damages instead. Nothing more was adjudicated. The judgment in the present action adjudicated the title to the proceeds of the note after the note and trust deed had been reassigned by Robert to Harry, without consideration, and a part of its proceeds distributed, likewise without consideration, by Harry to his children. Harry's gifts of the proceeds to his children were a fraud upon his creditors. The prior judgment did not bar plaintiffs from asserting the fraud.

The judgment is affirmed.

Wood (Parker), J., and Vallée, J., concurred.

A petition for a rehearing was denied January 16, 1957.